UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TRINIDAD SUYAPA BARAHONA<br>Plaintiff | * | CIVIL ACTION |
| | * | NO. 05-0152 |
| VERSUS | * | SECTION B |
| DILLARD'S INC. | * | MAGISTRATE 2 |
| Defendants | * | |
| ***************************************** | * | |

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO LIFT STAY AND VACATE ARBITRATION AWARD

Defendant Dillard's Inc. (f/k/a Dillards Department Stores, Inc.) respectfully requests that this court deny Plaintiff's Motion to Lift Stay and Vacate Arbitration Award ("Motion to Vacate") because plaintiff has failed to articulate a legitimate basis for vacatur. In her effort to persuade the court to vacate the arbitration award at issue, plaintiff has loaded her memorandum in support of her Motion to Vacate both with inaccuracies and some outright fiction. Yet, even if taken as true, plaintiff's assertions would still fall short of satisfying the Fifth Circuit's standard for vacating an arbitration award. Indeed, her arguments regarding the arbitration award at issue simply boil down to her belief that the arbitrator's conclusions that plaintiff suffered no unlawful discrimination or retaliation are incorrect; however, such an argument is outside the review of a federal court. Accordingly, the court should hold that plaintiff failed to carry her burden of establishing that vacatur is appropriate and enter an order denying plaintiff's Motion to Vacate.

1

## I.    BACKGROUND[1]

Plaintiff worked as a Dillard's employee at its store in Houma, Louisiana, until she was terminated on April 8, 2004.  Paintiff's termination gave rise to the instant action, which she filed on January 19, 2005, against Dillard's and Clinque Services, Inc. See Pl.'s Compl, Doc. 1.  Shortly after each defendant filed its answer, Dillard's and plaintiff filed a Consent Motion to Stay on August 25, 2005.  See Consent Mot. To Stay, Doc. 16.  Subsequently, the court entered an order granting the parties' motion to stay and administratively closed the instant case for arbitration pursuant to the Dillard's Arbitration Agreement (the "Agreement").  See Order, Oct. 18. 2005, Doc. 17.

On November 16, 2005, plaintiff made a proper demand for arbitration, and on November 23, 2005, the American Arbitration Association ('AAA') acknowledged receipt of the request for arbitration and subsequently issued a list of potential arbitrators from which the parties could select an arbitrator for their dispute pursuant to the Agreement.  However, before the parties began striking names from the list, plaintiff's counsel apparently confused the instant case with a different arbitration involving Dillard's and sent a letter to the AAA stating objections to Dillard's alleged 'striking' of the

---

[1]    The section of plaintiff's memorandum titled "Summary of Facts" should presumably set forth the facts plaintiff believes to demonstrate arbitrator misconduct justifying vacatur.  Instead, plaintiff's "Summary of Facts"—a section fraught with plaintiff's mere legal conclusions—represents a thinly veiled and argumentative attack on the arbitrator's reasoning in support of the arbitration award.  Thus, from start to finish, plaintiff makes no effort to disguise her request that the court do exactly what it cannot in this context: weigh the arbitrator's reasoning and re-decide the case.  Furthermore, in launching this initial attack, plaintiff sets the stage for a multitude of false and unsupported allegations to follow.  For example, the ipse dixit that she "proved that Dillard's illegally fired her as a result of her race/national origin," see Pl.'s Mem., Doc. 26, Attachment 1, p. 2, is obviously contradicted by the arbitrator's clear findings that plaintiff failed to "carr[y] her burden of proof" on her discrimination and retaliation claims.  See Arbitration Award, attached hereto as Exh. A, pp. 4-5.  Of course, the arbitrator is the fact-finder here, and plaintiff's contrary views hardly qualify as "facts."

AAA list of potential arbitrators issued for the dispute between plaintiff and Dillard's. See  Jan. 20, 2006, Ltr., attached as Exh. C to Pl.'s Mem. in Support of Mt. to Vacate ("Pl.'s Mem."); Jan. 27, 2006, Ltr., attached hereto as Exh. B.  In the midst of this confusion, the AAA issued a second list of potential arbitrators, even though plaintiff and Dillard's had never even attempted to strike names from the first list.  See Exh. B, p. 1.  Indeed, as demonstrated by correspondence between the parties and the AAA, counsel for Dillard's had attempted to begin the arbitrator-selection process with plaintiff's counsel in the weeks leading up to and following the January 20, 2006, letter from plaintiff's counsel to the AAA.  Id. See also Feb. 13, 2006, Ltr., attached hereto as Exh. C; Feb. 16. 2006, Ltr., attached hereto as Exh. D.

Subsequently, after the confusion cleared, the parties did, in fact, choose an arbitrator from the first list generated by the AAA.  See Feb. 22, 2006, Ltr., attached hereto as Exh. E.  The parties chose Mr. John F. Lipani as the arbitrator.  Id.  However, Mr. Lipani subsequently declined the appointment.  See March 8, 2006, Ltr., attached hereto as Exh. F.  As a result, the AAA generated a third list of potential arbitrators. From the third AAA list, the parties selected Mr. Robert C. Rice as the arbitrator for their dispute.  See June 6, 2006, Ltr., attached hereto as Exh. G.

Following a period of extensive discovery, including Dillard's production of over 400 pages of documents to plaintiff and some 13 depositions, a three-day arbitration hearing took place from June 26, 2007 through June 28, 2007, regarding plaintiff's claims of natural origin discrimination and retaliation.  See Tr. Vols. I-III Indices, attached hereto as Exh. H.  During the hearing, both parties submitted extensive evidence before the arbitrator, including the testimony of 17 different witnesses.  Id.

On November 9, 2007, the arbitrator issued his 'Final Award' finding that plaintiff had failed to carry her burden of proof for both her discrimination and retaliation claims.  <u>See</u> Exh. A.[2/]  Plaintiff thus filed her present Motion to Vacate on December 10, 2007.

## II.    LEGAL STANDARD

Simply put, controlling Fifth Circuit precedent requires deference to the arbitrator's reasoned award in this case and, therefore, the court should deny plaintiff's Motion to Vacate.[3/]    Under settled law, "[j]udicial review of an arbitration award is 'exceedingly deferential." <u>See</u> <u>Am. Laser Vision, P.A. v. Laser Vision Inst., LLC</u>, 487 F.3d 255, 258 (5th Cir. 2007) (quoting <u>Kergosien v. Ocean Energy, Inc.</u>, 390 F.3d 346, 352 (5th Cir. 2004) (reversing district court's order of vacatur)).   This extreme level of deference constrains a court reviewing an arbitration award to a very limited role. Indeed, although arbitrators need not even give reasons for their awards, "when arbitrators provide a rationale for their awards, courts <u>may</u> <u>not</u> review that reasoning." <u>See</u> <u>Brabham v. A.G. Edwards & Sons Inc.</u>, 376 F.3d 377, 385 (5th Cir. 2004).  (emphasis added).  "Even 'the failure of an arbitrator to correctly apply the law is not a basis for

---

[2/]    Indicative of the apparent lack of care plaintiff exerted in preparing her Motion to Vacate, the arbitration award she attaches as Exh. A to her Memorandum in Support of Plaintiff's Motion to Vacate, is an award issued in another Dillard's arbitration, in which plaintiff was not a party.  As noted, Dillard's has attached the correct award as Exh. A.

[3/]    Incidentally, application of Louisiana state law would dictate the same result, for under Louisiana law, "a reviewing court may not substitute its own judgment for that of the arbitrator[']s."  <u>See</u> <u>Prod. Wireline Servs. V. Trans-Tech Int'l Wireline Servs.</u>, 685 So. 2d 480, 483 (La. Ct. App. 1996) (citing La. R.S. 9:4201 <u>et</u> <u>seq.</u>).  By state statute, Louisiana courts are "deprive[d]…of jurisdiction of the basic legal and factual question of liability" when reviewing arbitration decisions.  <u>Id.</u>  Indeed, even the inconsistency of an arbitrator's written reasons for judgment with the final award does not provided a basis for vacatur under Louisiana law.  <u>Id.</u>

setting aside an arbitrator's award." See Am. Laser, 487 F.3d at 258 (quoting Kergosien, 390 F.3d at 356).

Precluded from reviewing an arbitrator's reasoning, a district court can vacate an arbitration award "only on very narrow grounds." See Brabham, 376 F.3d at 380 (reversing district court's order vacating an arbitration award). The statutory grounds for vacatur of arbitration awards covered by the Federal Arbitration Act ("FAA") include the following:

> situations where 1) the award was procured by corruption, fraud, or undue means, 2) there was evident partiality or corruption in the arbitrators, or either of them, 3) the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced, or 4) the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

See UBS Fin. Servs., Inc. v. Bova, 2007 U.S. Dist. LEXIS 75042, *4-5 (E.D. La. 2007) (quoting 9 U.S.C. § 10(a)). Construing these four grounds for vacatur, the Fifth Circuit has emphasized that "[t]he FAA permits only strictly limited review⸺it has been called 'the narrowest known to the law.'" See Prescott v. Northlake Christian Sch., 2005 U.S. App. LEXIS 13684, *19, n.26 (5th Cir. 2005) (quoting ARW Exploration Corp. v. Aguirre, 45 F.3d 1455, 1462 (10th Cir. 1995)).

Here, plaintiff's apparent reliance on § 10(a)(3) for vacatur must fail because plaintiff can demonstrate neither arbitrator misconduct nor any evidence of an unfair hearing. "To constitute misconduct requiring vacation of an award, an error in the arbitrator's determination must be one that is not simply an error of law, but which so affects the rights of a party that it may be said that he was deprived of a fair hearing." See

Laws v. Morgan Stanley Dean Witter, 452 F.3d 398, 399 (5th Cir. 2006). Because the arbitrator committed no misconduct and because plaintiff received a fair three-day hearing, which was preceded by extensive discovery, § 10(a)(3) does not provide a basis for vacating the arbitration award. Furthermore, given the "strictly limited review" available, the court should decline plaintiff's unconvincing invitation to assess the arbitrator's reasoning. In short, the court should deny plaintiff's Motion to Vacate.

III. **DISCUSSION**

To support her Motion to Vacate, plaintiff submits five separately numbered arguments, asserting that she was deprived of a fair hearing based on allegations that (1) Dillard's failed to comply with the required arbitration-selection process, (2) Dillard's abused the discovery process, (3) the arbitrator did not issue a final award in plaintiff's favor, (4) the arbitrator did not "address" plaintiff's evidence, and (5) plaintiff had to pay for half of the cost of the arbitration hearing transcript. As explained below, most of plaintiff's allegations are simply untrue, but even if believed, these accusations and arguments—taken individually or collectively—do not provide a basis for vacating the arbitration award.

A. **Dillard's Did Not Fail to Comply with the Arbitrator-Selection Process, But Even If True, Plaintiff's Allegations to the Contrary Would Not Warrant Vacatur of the Arbitration Award.**

Plaintiff bases her first argument on totally fictitious factual representations, which the Court should disregard. Contrary to plaintiff's assertion, Dillard's complied with the Agreement's arbitrator-selection process as implemented by the AAA. Plaintiff's claims that Dillard's "did strike two entire lists of potential arbitrators, and AAA was unable to force Dillard's to select from the first list" are so thoroughly

contradicted by correspondence between the parties and AAA, see Exhs. B – G, that serious doubts arise whether plaintiff complied with Rule 11 of the Federal Rules of Civil Procedure in making these assertions.  Dillard's did not strike two AAA panels of arbitrators.  Instead, in the midst of confusion likely caused by incorrect statements of plaintiff's counsel to the AAA, the AAA issued a second panel of potential arbitrators to the parties before the parties had begun to strike names from the first AAA list.  See Exh. B, pp.1-2.  After counsel for Dillard's wrote AAA to explain the mix up and note that the second list was unnecessary, Dillard's and plaintiff selected an arbitrator from the first list produced by AAA.  See Exh. B, pp. 1-2; Exh. E.  Unfortunately, the arbitrator the parties thus selected declined to serve, so the AAA generated a third list of potential arbitrators. See Exh. F.  From this third list, the parties selected Arbitrator Rice.  See Exh. G.

At the time, Dillard's attributed plaintiff's misstatements to AAA that Dillard's had struck "an entire arbitration panel" to plaintiff's counsel's confusion with an entirely different arbitration to which plaintiff was not a party, but Dillard's cleared up that confusion in writing nearly two years ago.  See Exh. B.  Thus, plaintiff's present attempt to revive this misrepresentation about the arbitrator-selection process in this case is inexplicable and inexcusable.[4/]  Plaintiff knows Dillard's did not strike two arbitration panels in its arbitration with plaintiff, and plaintiff's assertion that Dillard's could not be forced to choose from the first list of potential arbitrators is baffling in light of the parties'

---

[4/]    Indeed, plaintiff's disingenuousness extends even further to include blatant misrepresentations of her own attorney's correspondence.  Plaintiff now claims her "counsel objected to Dillard's striking of two entire lists of arbitrators," see Pl.'s Mem., Doc. 26, Attachment 1, p. 4; on the contrary, the correspondence she cites to support this allegation demonstrates that plaintiff's lawyer objected to the striking of "an entire panel of arbitrators"—not two panels.  See Pl.'s Exh. C (emphasis added).  Plaintiff's strategy of misrepresenting correspondence to fit her needs and revising history (without support) to improve her case should not be tolerated.

initial selection of John F. Lipani from the AAA's first list. See Pl.'s Mem., Doc. 26, Attachment 1, p. 4; Exh. E.

However, even if the court accepted these completely unsupported allegations regarding the selection of the arbitrator, this would not even remotely show that plaintiff was deprived a fair hearing and, therefore, would not provide a basis for vacating the arbitration award. "A fundamentally fair hearing is one that 'meets the 'minimal requirements of fairness'—adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator." See Generica Ltd. v. Pharmaceutical Basics, 125 F.3d 1123, 1130 (5th Cir. 1997) (internal citations omitted). Notably, however, parties to an arbitration "should not expect the same procedures they would find in the judicial arena. [as] [a]rbitration proceedings are not constrained by formal rules or procedure on evidence." Id. (internal citations omitted).

Plaintiff has not articulated how the process used to select Arbitrator Rice could have deprived her of a fair hearing. Moreover, in making this arbitrator-selection argument, plaintiff does not dispute the impartiality of the arbitrator, and plaintiff can make no legitimate argument that the parties' selection of Arbitrator Rice deprived her of either adequate notice of the June 2007 hearing or a hearing on the evidence. Finally, plaintiff's counsel participated in the selection of Arbitrator Rice from a list provided by AAA and her failure to object at the hearing to Arbitrator Rice's impartiality or inappropriate selection estops plaintiff from claiming that the arbitration-selection process somehow deprived her of a fair hearing. See Gateway Technologies v. MCI Telecommunications Corp., 64 F.3d 993, 998 (5th Cir. 1995) (a party "cannot stand by during arbitration, withholding certain arguments, then, upon losing the arbitration, raise

such arguments in federal court"). In short, plaintiff's after-the-fact wish that she would have selected a different arbitrator who may have decided her claims differently than Arbitrator Rice provides no support whatsoever for plaintiff's Motion to Vacate.

**B.    Dillard's Did Not Abuse the Discovery Process, But Even If True, Plaintiff's Allegations Would Not Warrant Vacatur of the Arbitration Award.**

Plaintiff's second argument is based, in part, on selective misrepresentation of statements made by counsel for Dillard's at the arbitration hearing and, more importantly, is now moot and, thus, lacks relevance to the issues before the court because the arbitrator remedied any discovery problems by penalizing Dillard's with an adverse evidentiary inference. In short, the alleged discovery abuse cannot serve as evidence of an unfair hearing. In addition, Dillard's continues to maintain that the record here shows no actual "abuse" of the discovery process ever occurred. Simply put, the inadvertent non-production of emails did not deprive plaintiff of a fair hearing, and plaintiff has failed to articulate a legitimate argument to the contrary.

As Dillard's explained at the arbitration hearing, and in its post-hearing briefs, counsel for Dillard's did not learn that any responsive but undisclosed emails existed until the third day of the arbitration hearing;[5/] therefore, any non-disclosure occurred inadvertently and, Dillard's believes, should not even have given rise to an adverse inference under Fifth Circuit law. See Tr. Vol. III, attached hereto as Exh. I, pp. 70-86; Dillard's Post-Hr'g. Br., attached hereto as Exh. J, pp. 19-20. In any event, that

---

[5/]    Without any supportive citation, plaintiff asserts that "Dillard's lawyer did not even ask…for [the non-produced] e-mails." See Pl.'s Mem., Doc. 26, Attachment 1, p. 5. The hearing transcript contradicts plaintiff's assertion in full, for at the hearing, Dillard's counsel stated that he had requested responsive emails but had received only "emails involving communications with the legal department at Dillard's," in response to his request. See Exh. I, p. 78.

Dillard's was penalized by an adverse inference where Fifth Circuit law, at least arguably, would not require one, undermines any suggestion plaintiff can make of the arbitrator's favoritism toward Dillard's or unfairness toward plaintiff.

      In addition, when the inadvertent non-disclosure of e-mails came to light at the arbitration hearing, Dillard's proposed a continuance in order to produce the e-mails at issue and to allow any additional needed discovery, but plaintiff opposed that request. Accordingly, the arbitrator adopted plaintiff's position and rejected Dillard's proposal. See Exh. I, pp. 81-6; Exh. A, p.2. Thus, plaintiff's opposition to continuance of the arbitration hearing, which would have given her an opportunity to review the e-mails in question, estops plaintiff from now claiming she was denied an opportunity to review the e-mails before the hearing continued. See, e.g., Gateway Technologies, 64 F.3d at 998.

      Critically, though, the arbitrator eliminated any unfairness that conceivably could have arisen from the inadvertent non-production of e-mails by expressly imposing an adverse evidentiary inference against Dillard's. The arbitrator "assumed that [the] e-mails would have been contrary to Dillard's position" and also proceeded to "examine all of Dillard's evidence with particular caution." See Exh. A, p. 2. In short, while Dillard's continues to believe that its inadvertent non-disclosure did not warrant the imposition of an adverse inference under Fifth Circuit law, the adverse inference the arbitrator imposed clearly forecloses plaintiff's argument that Dillard's non-production deprived her of a fair hearing.

**C.    That the Arbitrator Did Not Issue a Final Award in Plaintiff's Favor After Imposing an Adverse Evidentiary Inference against Dillard's Does Not Warrant Vacatur of the Arbitration Award.**

As set forth above, plaintiff's third argument that "Dillard's was not penalized for abuse of the discovery process," is plainly false as demonstrated by the arbitrator's express imposition of an adverse inference against Dillard's. See Exh. A, pp. 1-2. Furthermore, plaintiff's disagreement with the conclusions the arbitrator drew from the evidence, which he filtered through an adverse inference against Dillard's, simply does not provide a basis for vacating the arbitration award. Under binding Fifth Circuit precedent "when arbitrators . . . provide a rationale for their awards, courts may not review that reasoning." See Brabham, 376 F.2d at 385 (emphasis added). Indeed, a court must "resolve all doubts [about an arbitrators' reasoning] in favor of arbitration." Id. Additionally, whether the arbitrator's ultimate conclusions are correct is a question outside the court's review, see United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987) ("that a court is convinced [that an arbitrator] committed serious error does not suffice to overturn his decision"); Kergosien, 390 F.3d at 357 (holding that "[t]he district court improperly substituted its judgment for that of the arbitrator" by vacating an arbitration award because "[c]ourts are not authorized to review the arbitrator's decision on the merits"); thus, the court cannot rely on plaintiff's belief that the arbitrator "did not incorporate his finding of [discovery] abuse in his final decision" as a basis for vacatur.

Clearly, an adverse inference does not automatically dictate or require a final award in favor of the party benefiting from the inference, nor does it relieve a plaintiff of her burden of proving a prima facie case of Title VII discrimination or retaliation. Obviously, here, the arbitrator determined—despite the adverse inference

imposed on Dillard's—that plaintiff failed to "carr[y] her burden of proof" on her discrimination and retaliation claims.  See Exh. A, pp. 4-5.  Of course, plaintiff is disappointed with the arbitrator's reasoning, but as held in Brabham, this Court "may not review that reasoning." See Brabham, 376 F.2d at 385.[6/]

### D.   The Arbitrator Addressed Plaintiff's Evidence and Concluded Plaintiff Failed to Discharge Her Burden of Proof.

With her fourth point, plaintiff demonstrates her misconception of a federal court's proper role in reviewing an arbitration award.  Much like plaintiff's third point, here plaintiff essentially challenges the rationality of the arbitrator's award, suggesting that the arbitrator's award in favor of Dillard's indicates the arbitrator's partiality and that the Arbitrator did not "address" plaintiff's evidence.  See Pl.'s Mem., Doc. 26, Attachment 1, p. 6.  To the contrary, the arbitration award sets forth the arbitrator's reasons for holding as he did and, thereby, demonstrates that the arbitrator did consider plaintiff's evidence.  Plaintiff can offer no real basis to support her contrary suggestion, but even if she could, it would not support vacatur of the arbitration award.

As noted, even if the arbitrator had not clearly explained the reasons supporting his decision, under Fifth Circuit precedent, it would constitute error to vacate the arbitration award based on the Court's inability to ascertain the arbitrator's reasoning.  See Brabham, 376 F.3d at 385 (holding that "[a]rbitrators need not give reasons for their awards").  Furthermore, in this case, the parties expressly agreed at the arbitration hearing that the arbitration award need not include "the level of detail and very detailed findings of

---

[6/]   Even if the holding in Brabham did not exist, a cursory review of the parties' post-hearing briefs demonstrates that the arbitrator's decision was fully informed by the parties' thorough analyses of Plaintiff's claims.  See Exhs. J, Dillard's Post-Hr'g. Reply Br., attached hereto as Exh. K; Pl.'s Exh. H.  Again, the mere fact that plaintiff failed in her efforts to persuade the arbitrator is obviously not a legitimate basis for a Motion to Vacate the award.

a fact and conclusions of law you would expect in a trial court." See Tr. Vol. I, Exh. L, p. 15. In light of this explicit agreement, the six-page arbitration award, which details the arbitrator's assessment of the evidence before him and the reasons supporting his legal conclusions, easily satisfies whatever burden the arbitrator bore to "address" plaintiff's evidence. See, generally, Exh. A. Indeed, on its face, the detailed arbitration award also plainly demonstrates that the parties received a full and fair hearing of the relevant evidence in this case.

Although plaintiff characterizes her arguments at the outset of her memorandum as supporting her claim that she was deprived a fair arbitration hearing, in her fourth point, plaintiff also suggests the absurd proposition that the arbitrator's issuance of an award that contradicts plaintiff's views of the proper outcome of her case somehow demonstrates Arbitrator Rice's partiality. If this outlandish notion were the law, however, every arbitration award would be subject to challenge by the losing party. Federal courts, however, cannot vacate arbitration awards based on mere speculation of partiality or, in fact, even the mere "appearance of partiality." See Mantle v. Upper Deck Co., 956 F. Supp. 719, 729 (5th Cir. 1997). Instead, a party urging vacatur must bear the "onerous burden" of "produc[ing] specific facts [showing partiality] and the alleged partiality must be 'direct, definite, and capable of demonstration rather than remote, uncertain, or speculative." Id. (internal citation omitted). Plaintiff falls far short of making such a showing with her rank speculation that "[n]o fair and impartial fact finder could reach the same conclusion reached [by Arbitrator Rice]" based on plaintiff's self-serving assessment that "[t]he hearing favored [plaintiff] and established discrimination." See Pl.'s Mem., Doc. 26, Attachment 1,

p. 7.  Again, plaintiff's disagreement with the arbitrator's conclusion justifies neither vacatur nor revisiting the merits weighed by the arbitrator.

   **E.    That Plaintiff Was Required to Pay for Half the Cost of the Arbitration Hearing Transcript is Unremarkable and, More Importantly, Completely Irrelevant.**

   Plaintiff's fifth point not only follows her familiar pattern of misrepresenting the arbitration record, but it completely lacks relevance to the issue of whether plaintiff received a fair hearing, and in no way supports plaintiff's Motion to Vacate.

   The Agreement here expressly governs how an arbitration hearing transcript should be procured, purchased, and shared among the parties to the arbitration. See Tr. Vol. III, Exh. M, pp. 150-51.  Plaintiff correctly notes that, unless both parties desire a copy of the transcript, the party requesting a transcript must pay the full cost under the Agreement, but then the requesting party need not provide a copy to the opposing (non-requesting) party.  Id.  Plaintiff also notes correctly that where only one party requests a transcript, the requesting party must allow the opposing (non-requesting) party to inspect the transcript.  Id.  Plaintiff, however, omits from her characterization of the transcript provisions in the Agreement that where both parties to an arbitration indicate a desire to have a copy of the transcript, the parties must split the cost of the transcript.  Id.  Thus, the Agreement distinguishes between obtaining a copy of the transcript and allowing a non-requesting party an opportunity for "inspection" of the transcript."  Id.

   Plaintiff falsely asserts that "at the conclusion of the hearing, Dillard's counsel refused to make a copy of the transcript available in New Orleans," see Pl.'s Mem.,

Doc. 26, Attachment 1, p. 7. A review of the hearing transcript plainly demonstrates that counsel for Dillard's never refused to make a copy of the transcript available for review in New Orleans for the simple reason that it was never discussed, <u>see</u> Exh. M, pp. 149-152. Indeed, at no time during the hearing did plaintiff's counsel ask Dillard's merely to make the transcript available for inspection. <u>Id.</u> Instead, the parties and arbitrator engaged in the following short conversation after reading the relevant transcript rules in the Agreement:

> MR. EVANS: So you're not going to give me a copy, Mr. Burke?
>
> Mr. BURKE: Correct; until you pay for half.
>
> ARBITRATOR RICE: That seems to be the plain language of the plan.
>
> MR. EVANS: Okay. We'll split the costs.

<u>Id.</u> at p. 152. Clearly, Dillard's never refused a request to make the transcript available for inspection anywhere—much less in New Orleans. Indeed, the issue of making the transcript available for inspection never arose, nor did the issue of where such an inspection would take place. Plaintiff's assertions to the contrary constitute an inexplicable misrepresentation of the record and, along with plaintiff's other misrepresentations, have caused an extraordinary waste of the parties' and the court's resources and time in dealing with her Motion to Vacate.

Putting aside plaintiff's disdain for the actual record here, her counsel's explicit agreement to pay for half the cost of the transcript in order to obtain a copy, rather than merely have an opportunity to inspect it, renders plaintiff's fifth argument for vacatur completely meaningless. Moreover, even if the situation regarding the hearing transcript had taken place as plaintiff asserts that it did, it could not serve as a basis for

vacating an arbitration award under the provisions of the FAA.  See p. 5, supra.  Plaintiff's pointless fifth and final argument represents yet another reminder that plaintiff's motion to vacatur lacks any legal basis and amounts to nothing more than plaintiff merely expressing her displeasure with the outcome of her arbitration with Dillard's.

**IV.    CONCLUSION**

   WHEREFORE, for the foregoing reasons, Dillard's requests that the court enter an Order denying plaintiff's Motion to Vacate and granting any further relief to Dillard's the court deems appropriate.

       Respectfully submitted,

       **BRYAN CAVE LLP**

       MICHAEL P. BURKE
       (Admitted Pro Hac Vice)
       Bryan Cave LLP
       211 North Broadway, Suite 3600
       St. Louis, MO  63102
       (314) 259-2700–telephone
       (314) 259-2020–facsimile

    By : :___/s/ Tara G. Richard_____
       **TARA G. RICHARD**
       La. Bar No. 26356
       Jones, Walker, Waechter,
        Poitevent, Carrère & Denègre, LLP
       201 St. Charles Avenue
       New Orleans, LA  70170
       (504) 582-8000–telephone
       (504) 582-8011–facsimile

       Attorneys for Dillard's, Inc., f/k/a
        Dillard's Department Stores, Inc.,
        Defendant

## <u>CERTIFICATE OF SERVICE</u>

        I hereby certify that on January 2, 2008, the foregoing was filed electronically with the clerk of the court to be served by operation of the Court's electronic filing system upon the following:

ROBERT B. EVANS, III
Burgos & Evans, L.L.C.
3632 Canal Street
New Orleans, LA  70119-6135

Attorneys for Plaintiff

        /s/ Tara G. Richard