UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TRINIDAD SUYAPA BARAHONA, Plaintiff | * | CIVIL ACTION |
| | * | NO. 05-0152 |
| VERSUS | | |
| | * | SECTION B |
| DILLARD'S INC. and CLINIQUE SERVICES, INC., Defendants. | * | MAGISTRATE 2 |

******************************************************************************

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION TO VACATE AS A RESULT OF FRAUD,
AND IN SUPPORT OF
DEFENDANT'S MOTION TO CONFIRM ARBITRATION AWARD**

Two years ago, on December 10, 2007, plaintiff filed a motion styled "Motion to Lift Stay and Vacate Arbitration Award" (the "Original Motion"). Just recently, on June 2, 2009, plaintiff filed a similar motion styled "Motion to to [sic] Vacate Arbitration Award as a Result of Fraud" (the "Current Motion"). In her Original Motion, plaintiff asserted that there was arbitrator misconduct and discovery abuse by defendant which entitled her to vacatur. Based essentially on the same facts she urged previously, plaintiff now asserts the arbitration award was procured by "fraud" and, therefore, should be vacated. As explained below, however, the circumstances on which plaintiff relies do not even come close to satisfying the statutory requirement for vacating an arbitration award pursuant to the Federal Arbitration Act (9 U.S.C. §§1-16) ("FAA"). Consequently, plaintiff's Current Motion (and the Original Motion) must be denied.

Furthermore, especially given the recent decision of the United States Supreme Court in Hall St. Assocs., L.L.C. v. Mattel, Inc., 128 S. Ct. 1396 (2009), inasmuch as there is no statutory basis for vacating or modifying the arbitration award under the Federal Arbitration Act,

this Court should grant defendant's Motion to Confirm Arbitration Award, which is filed herewith.

### I. BACKGROUND

1. Plaintiff worked as a Dillard's employee at its store in Houma, Louisiana until she was terminated on April 8, 2004.

2. Claiming that her termination was the result of national origin discrimination and/or retaliation, plaintiff filed her lawsuit in this Court on January 19, 2005.

3. Thereafter, on August 25, 2005, acknowledging that the claims raised in plaintiff's lawsuit were subject to arbitration pursuant to the Dillard's Rules for Arbitration, the parties filed a Consent Motion to Stay, which was granted by this Court on October 18, 2005.

4. Following extensive discovery – including 13 depositions and over 400 pages of documents produced -- a 3-day arbitration hearing was held in New Orleans before Arbitrator Robert C. Rice on June 26-28, 2007.

5. Extensive evidence was presented at the arbitration hearing, including testimony from 17 different witnesses. In addition, thorough post-hearing briefs were presented by both parties to the arbitrator.

6. Subsequently, on November 9, 2007, Arbitrator Rice issued his Final Award explicitly finding that plaintiff had failed to carry her burden of proof on either her discrimination or her retaliation claim. (See Exh. A, attached hereto.)

7. Unhappy with the Final Award, plaintiff filed her Original Motion on December 10, 2007. In the Original Motion, plaintiff asserted 5 "Reasons to Vacate":

"1. Dillard's violated its own arbitration rules."

"2. Dillards [sic] abused the discovery process."

"3. Dillard's was not penalized for abuse of the discovery process."

>"4.   The Arbitrator failed to discuss any item of evidence that Barahona offered, despite the fact that Dillard's witnesses were impeached and Dillard's defense makes no sense."
>
>"5.   Dillard's caused Barahona to incur substantial, unnecessary costs."

(See Doc. 26).

8.   This Court held oral argument on plaintiff's Original Motion on June 5, 2008.  During oral argument, the Court expressed certain views regarding the claims raised in plaintiff's motion, however, no final order was issued formally ruling on the Original Motion.

9.   Rather, the Court issued an Order dated June 5, 2008 which, pursuant to discussions that took place during oral argument on June 5, 2008, provided, in pertinent part:

>IT IS ORDERED for oral reasons stated plaintiff's Motion to Lift Stay and Vacate Arbitration Award necessitates that this matter is REMANDED to the arbitrator.  On remand, arbitrator shall examine the emails at issue and reconsider his findings in view of said emails.

The June 5 Order also provided:

>IT IS FURTHER ORDERED that parties submit to this Court no later than June 12, 2008 a joint proposal of emails to be examined.

(See Doc. 39).

10.   Complying with the June 5 Order, the parties filed their "Joint Proposal Regarding Emails to be Examined" on June 12, 2008.  At that same time, Dillard's submitted a letter to the Court which, in part, noted that, by complying with the June 5 Order, Dillard's did not "explicitly or implicitly confer new or expanded authority on the arbitrator in this matter and [did] not waive its right to assert that the doctrine of *functus officio* precludes the arbitrator from reconsidering the merits of the award."  Similarly, Dillard's letter also noted that Dillard's did not waive its right to assert that the Federal Arbitration Act (9 U.S.C. §§ 1-16) "provides the

exclusive method and means for judicial review of the arbitration award at issue . . . and does not authorize the remand directed in the June 5 Order."

11. Pursuant to the June 5 Order and the joint proposal filed by the parties on June 12, 2008, the Court issued an Order dated June 16 which, in pertinent part, states:

> IT IS ORDERED that parties' joint proposal that the following emails should be submitted to the arbitrator for examination pursuant to the Court's Order is hereby ADOPTED:
>
>> Any and all emails to or from Patrick Broussard, Charlyn Bernard, Linda Sholtis and/or Diane Champagne, created during her employment with Defendant, which regard Suyapa Barahona. The foregoing is limited to, however, non-privileged emails created during the time Patrick Broussard was the Store Manager at Dillard's store in Houma, Louisiana.
>
> IT IS FURTHER ORDERED that Defendant submit the relevant emails to the arbitrator within 30 days of the Court's Order with a copy to Plaintiff's counsel.

(See Doc. 41).

12. Complying with the June 16 Order, on July 3, 2008, Dillard's submitted to Arbitrator Rice all of the e-mails described in the June 16 Order. Dillard's also provided Arbitrator Rice with copies of the June 5 and June 16 Orders, as well as a copy of the transcript of the motion hearing held on June 5, 2008. (See Exh. B, attached hereto.)

13. Subsequently, on July 21, 2008, Arbitrator Rice held a telephone conference with the attorneys for the parties to discuss the Orders of June 5 and June 16. The results of that conference and subsequent related events are described in detail by Arbitrator Rice in his letter dated January 19, 2009, addressed to the American Arbitration Association, which

was then forwarded by the American Arbitration Association to the parties. (See Exh. C, attached hereto.)

14. Among others, Arbitrator Rice's letter states:

> "10. Given my understanding of the doctrine of *functus officio*, I do not believe that I have authority to act. As far as I am aware, at this point, neither party has asserted that I have such authority."

15. On June 2, 2009, trying for yet one more bite at the apple, plaintiff filed the Current Motion. In brief, this time around plaintiff re-labels the "abuse of discovery" claims raised in her Original Motion as "fraud" and again asserts them as grounds for vacating the Final Award. Notably, consistent with the statement of Arbitrator Rice (see ¶ 15, supra), plaintiff does not argue here that Arbitrator Rice does, indeed, have any authority to reconsider his Final Award.

16. Despite being dressed up in these new clothes, however, plaintiff's claim that the arbitration award should be vacated still has no merit and should be denied.

## II. APPLICABLE LAW

The law is settled that the moving party has the burden of proving that a court should vacate an arbitration award. Trans Chem. Ltd. v. China Nat'l Mach. Import & Export Corp., 978 F. Supp. 266, 303 (S.D. Tex. 1997), adopted by, 161 F.3d 314 (5th Cir. 1998). It is also settled law that "[j]udicial review of an arbitration award is 'exceedingly deferential.'" Am. Laser Vision, P.A. v. Laser Vision Inst., LLC, 487 F.3d 255, 258 (5th Cir. 2007) (quoting Kergosien v. Ocean Energy, Inc., 390 F.3d 346, 352 (5th Cir. 2004)). "Even 'the failure of an arbitrator to correctly apply the law is not a basis for setting aside an arbitrator's award." Id. (quoting Kergosien, 390 F.3d at 356).

Moreover, as the Supreme Court recently explained, when reviewing an arbitration award under the Federal Arbitration Act ("FAA"), a district court may act only as

expressly provided in the FAA. See Hall St. Assocs. v. Mattel, Inc., 128 S. Ct. 1396 (2008). Under Hall Street, the FAA provides the "exclusive grounds" for vacating or modifying an award. Id. at 1403. In reaching this conclusion, the Supreme Court rejected a reading of the FAA that would "open[ ] the door to the full-bore legal and evidentiary appeals that can rende[r] informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process." Id. at 1405 (emphasis added).

Although "fraud" is a statutory basis for vacatur under the FAA (9 U.S.C. § 10(a)(1)), a plaintiff must show that such fraud actually occurred by clear and convincing evidence, that such fraud could not have been discovered through due diligence, and that a causal nexus exists between the arbitrator's decision and the alleged fraud. Karaha Bodas Co., v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 364 F.3d 274, 306 (5th Cir. 2004). Essentially, where a party alleges fraud as a basis for vacatur, a court must determine whether the alleged fraud rendered "the arbitration proceedings . . . fundamentally unfair." Forsythe Int'l, S.A. v. Gibbs Oil Co. of Tex., 915 F.2d 1017, 1020 (5th Cir. 1990).

### III. DISCUSSION

Plaintiff's efforts to vacate the arbitration award here must fail because she simply cannot prove that a statutory basis for vacatur exists.[1/] "Courts apply a three-prong test to determine whether an arbitration award is [fatally] affected by fraud: (1) the movant must establish the fraud by clear and convincing evidence; (2) the fraud must not have been discoverable upon the exercise of due diligence before or during the arbitration; and (3) the

---

1/ Because plaintiff styles the Current Motion as based on "fraud" – which, as noted, is a statutory basis for vacatur under the Federal Arbitration Act, 9 U.S.C. § 10(a)(1) – defendant Dillard's addresses this "fraud" claim in this memorandum. To the extent plaintiff is really still relying on § 10(a)(3) (arbitrator misconduct or misbehavior), defendant relies on its previously filed "Defendant's Response in Opposition to Plaintiff's Motion to Lift Stay and Vacate Arbitration Award" (see Doc. 32, filed Jan. 2, 2008) and incorporates the same herein by this reference.

person challenging the award must show that the fraud materially related to an issue in the arbitration." Karaha Bodas Co., 364 F.3d at 306. Plaintiff cannot prove any of these elements; thus, binding precedent requires denial of plaintiff's Current Motion. And, in this absence of a statutory ground for vacatur, defendant is entitled to confirmation of the Final Award. Schlobohm v. Pepperidge Farm, Inc., 806 F.2d 578, 580 n.2 (5th Cir. 1986).

Plaintiff's claims in the Current Motion (as well as the bulk of her claims in the Original Motion) all arise out of her learning, during the testimony of Dillard's Store Manager Patrick Broussard at the arbitration hearing, that certain relevant e-mails existed which were inadvertently not produced during pre-hearing discovery. Because plaintiff's memorandum mischaracterizes what actually took place at the arbitration hearing, a copy of the relevant portion of the hearing transcript is attached hereto as Exhibit D (Tr. Vol. 3, pp. 70-88), and pertinent excerpts of the actual testimony are set forth below:

Page 70

. . .

| | |
|---|---|
| Evans: | Did you ever communicate with any Dillard's employee regarding Ms. Barahona via email? |
| Broussard: | Yes. |
| Evans: | Would that have been during her employment? |
| Broussard: | Yes. |
| Evans: | Those documents were not produced in response to discovery Request for Production No. 2. |

. . .

Page 75

| | |
|---|---|
| Arb. Rice: | Did you ever produce email? |
| Burke: | Not as – I was unaware of any email, so I don't believe we produced any email that wasn't already in the files. There are copies of some things in the files. |

. . .

Pages 77-78

. . .

| | |
|---|---|
| Evans: | But he admitted he didn't inquire.  He didn't even know emails were made.  So apparently, he never even inquired to try to respond.  He made a general objection it was too broad and never said, "I've inquired" – here we are at trial and there are emails regarding her employment that we don't have.  I can't cross-examine them. I don't have that. |

. . .

Pages 78-80

. . .

| | |
|---|---|
| Burke: | I did check for email.  The only email I discovered was emails involving communications with the legal department at Dillard's. |
| Arb. Rice: | Mr. Broussard, were you thinking about emails other than the legal department?  That's how I understood the question. |
| Broussard: | I understood it as – the emails that I have are stuff to the legal department or notes that I made to myself, which were the same thing that are in the EEOC statements. |
| Arb. Rice: | That was after her termination.  Right?  The EEOC? |
| Broussard: | Yes, sir. |
| Arb. Rice: | The question that you were asked, and I thought you answered very clearly was, was there email by you involving you – email correspondence involving you related to Ms. Barahona during her employment.<br><br>I understood your answer to be very clear that yes, there was. |
| Broussard: | I sent notes to myself regarding her employment. |
| Arb. Rice: | Okay. |
| Broussard: | Notes of situations, like, after the initial incident in October of 2003. |

Pages 80-81

. . .

| | |
|---|---|
| Arb. Rice: | So rather than handwritten notes in a personnel file, you sent emails to yourself to record things? |
| Broussard: | Yes, sir. |
| Arb. Rice: | During Claimant's employment? |
| Broussard: | Yes, sir. |

| | |
|---|---|
| Burke: | I wasn't aware of that. |
| | The emails I asked for – what I found out about emails – what I thought I was told, what I understood, was the emails with the legal department. |

. . .

Pages 81-82

. . .

| | |
|---|---|
| Burke: | Why don't we simply adjourn and get the stuff. This is an arbitration. We can pick it up again some other time. We don't have juries we have to send home. |
| | I have no idea what we're going to see, if it's going to be very much at all. I'm simply not familiar with it. But I'm prepared to do that. |
| Evans: | It may require opening discovery again. I think it's absurd. |

. . .

Pages 83-84

. . .

| | |
|---|---|
| Evans: | The crux and the reason we are here is the decision-maker's motive, and there are emails and records which have never been produced. |
| | And now, I have no – now that he knows I'm going to examine him on them, I've got no way to ever tell the completeness, veracity, cross-examination – I just don't know. I don't know what I'm going to get now. Now that he knows exactly what I'm looking for – he's listened to my questions. |
| | I don't know that I'll ever get the truth in the responses. I'm prejudiced that I didn't have a chance to use it in discovery. |

. . .

| | |
|---|---|
| Burke: | I still say that – well, the proper step to take is to continue the hearing. I just think that is it. |

. . .

| | |
|---|---|
| Burke: | And this is an innocent event, so – and it's easy enough to do to just continue this, and I think that's the appropriate thing to do. |
| Evans: | I object about as much as anybody can, and I think I'd have to appeal if this thing was adjourned and maybe take a writ to the courts if – it's just amazing to me that they could withhold emails. |

. . .

Pages 86-88

. . .

| | |
|---|---|
| Evans: | Were the only emails you remember drafting to yourself during your employment? Or did you communicate with Diane regarding Ms. Barahona? |

Broussard: I did not send anything to Diane regarding Ms. Barahona. I sent a note regarding the October '03 incident to myself.

Evans: What about the December, Mona Richard –

Broussard: I did not send a note to myself about Mona Richard or Rose Boutte.

And I sent –

Evans: How clearly do you remember which incidents you sent yourself emails for? You typed memos –

Broussard: I know I sent one for the October incident. I specifically remember that one.

Evans: My concern is this: I don't want to put you in a trick bag where you feel like you have to answer me.

I know that you've typed correspondence for the responses to the EEOC. You've listened to questions from Mr. Burke and from me. I don't want you to feel like you know for certain that you responded for certain things. I know sitting at the typewriter maybe in your mind you remember typing.

So if you don't remember, I think it's more appropriate to say you don't remember.

Do you specifically remember all the incidences you typed to yourself?

Broussard: I can tell you the ones I do remember specifically.

Evans: I'm asking if you think you remember all of it?

Broussard: I think I do.

Evans: Which ones do you think you remember?

Broussard: I remember the October incident. I remember the recap from – she was termed at that point. I remember –

Evans: It doesn't seem like you remember, Mr. Broussard.

Broussard: There's one that I sent to my district manager before the term. Those are the two that I remember advising her of the situation.

. . .

In her memorandum in support of the Current Motion, one of the assertions is that "contrary to the manager's testimony [at the arbitration hearing], the emails are more than emails to himself" (see Doc. 44-2, page 1). Obviously, in light of Broussard's actual testimony at the hearing, as set forth above, this plaintiff's assertion is false. Broussard clearly testified that he had sent emails to his District Manager. Thus, any claim of surprise does not ring true. Plaintiff's memorandum also makes the assertion that "the emails were more derogatory than

originally stated by the decision-maker [*i.e.*, Broussard]" (see Doc. 44-2, p. 5).  Again, in light of the actual testimony set forth above, it is clear that this statement is also false.  Broussard never testified at the arbitration hearing about the specific contents of any of the missing emails.  And, again, claims of surprise do not ring true.  Obviously, plaintiff now deeply regrets the strategic decision made at the arbitration hearing to oppose defendant Dillard's request to adjourn the arbitration hearing to produce the missing emails so that plaintiff could use them for whatever purposes she chose prior to reconvening the hearing.  Unfortunately for plaintiff, the Federal Arbitration Act does not provide a mechanism to remedy such a mistake.

**A.      Plaintiff Cannot Establish Fraud with Clear and Convincing Evidence.**

Simply put, defendant's non-production of documents in pre-arbitration discovery does not constitute "fraud" for purposes of § 10(a) of the FAA.  The failure to produce documents in pre-arbitration discovery does not constitute the type of fraud, corruption, or undue means on which a court can vacate an arbitration award.  See Karaha Bodas Co., 364 F.3d at 306-07 (holding that a party's "failure to disclose [in discovery] the political [?] risk insurance policy does not provide a basis for refusing to enforce the Award").  See also Nat'l Cas. Co. v. First State Ins. Group, 430 F.3d 492, 495-96, 499 (1st Cir. 2005) (holding vacatur was not appropriate under § 10(a) where "one party was offered a choice between producing documents or having to contend with an inference about their content" and the party chose to take the inference); PaineWebber Group, Inc. v. Zinsmeyer Trusts Pshp., 187 F.3d 988, 990-91 (8th Cir. 1999) (reversing vacatur and holding "[t]here was no . . . fraud in this case," where the plaintiff's alleged basis for vacatur was that the opposing party improperly "hid relevant documents through its claims of privilege"); USM Corp. v. SPS Technologies, Inc., 694 F.2d 505, 509 (7th

Cir. 1982), cert. denied, 462 U.S. 1107 (1983) (failure to voluntarily produce a document during discovery does not necessarily amount to fraud).

Furthermore, while drawing an evidentiary inference against a party based on the party's non-production of requested documents is a "routine remedy" in arbitration, the presence of such an inference does not render invalid an award for the party against whom such an evidentiary inference is drawn. Nat'l Cas. Co., 430 F.3d at 498-99.

Because plaintiff cannot show any "fraud" in the arbitration proceedings, her Current Motion must be denied. The "fraud" plaintiff alleges amounts to no more than the sort of pre-arbitration failure to produce documents in discovery that numerous courts, including the Fifth Circuit Court of Appeals, Karaha Bodas Co., 364 F.3d at 306-07, have held "does not provide a basis for refusing to enforce" an arbitration award. Moreover, given that defendant Dillard's repeatedly sought to postpone the arbitration hearing for the express purpose of allowing plaintiff to review the e-mails in question when it came to light they had not been produced, no inference can be drawn that defendant has any "evil" motive here either. Finally, plaintiff cannot escape the U.S. Supreme Court's recent express proscription of using § 10 of the FAA to lodge "evidentiary appeals" by merely dressing up her discovery dispute with defendant as "fraud." See Hall St. Assocs., 128 S. Ct. at 1405.

**B.   Plaintiff Cannot Establish That the Alleged Fraud Could Not Have Been Discovered through Due Diligence Prior to or During the Hearing.**

The simple fact that plaintiff did discover at the hearing defendant's inadvertent non-production of e-mails at the hearing, precludes plaintiff from establishing the second essential element of her argument for vacatur: namely, that she could not have discovered the alleged fraud before or during the hearing through the exercise of due diligence. To vacate for fraud, a court must conclude that the moving party's "due diligence" would not have led to the

discovery of the fraud "before or <u>during</u> the arbitration" hearing. <u>Karaha Bodas Co.</u>, 364 F.3d at 306 (emphasis added). "Where the grounds for fraud or undue means is not only discoverable, but discovered and brought to the attention of the arbitrators, a disappointed party will not be given a second bite at the apple." <u>Trans Chem. Ltd.</u>, 978 F. Supp. at 306, <u>adopted by</u>, 161 F.3d 314 (5th Cir. 1998) (internal quotation marks omitted). <u>See</u> also <u>Halliburton Energy Servs. v. NL Indus.</u>, Civil Action No. H-05-4160, 2009 U.S. Dist. LEXIS 27509, *120 (S.D. Tex. 2009) (holding that a party "should not be permitted to challenge the arbitration awards . . . on the basis of alleged fraud that it had the ability to discover during the arbitration proceedings").

Plaintiff's admission that she discovered at the arbitration hearing the conduct of defendant that she now asserts was fraudulent destroys her ability to argue—as she must—that she could not have discovered the alleged fraud "before or during" the arbitration hearing. Additionally, plaintiff's counsel had deposed Broussard prior to the hearing but failed to ask him at that deposition the questions that elicited Broussard's testimony regarding the non-produced e-mails at the hearing. Plaintiff cannot show that Broussard would have given plaintiff's counsel a different response if he had been asked the same questions at his deposition that he was asked at the hearing, so plaintiff lacks evidence to show that due diligence in more thoroughly deposing Broussard would not have led to her discovery of the alleged fraud prior to the hearing. Finally, and perhaps most significantly, plaintiff rejected and opposed defendant's request to postpone the hearing so that discovery of the non-produced e-mails could be pursued; therefore, plaintiff cannot now claim that it was impossible for her to have discovered or obtained copies of the e-mails at issue at the time of the hearing. And, as noted, this is a required element she must show to prevail on the Current Motion. <u>Karaha Bodas Co.</u>, 364 F.3d at 306.

**C.      Even if Plaintiff Could Prove Fraud, She Cannot Show a Nexus Between Such Fraud and the Arbitration Award.**

To justify vacatur under § 10(a)(1) of the FAA, plaintiff must demonstrate a nexus between the arbitration award and the fraud she alleges to have occurred in the arbitration proceedings.  The FAA does not permit vacatur for simply "any fraudulent conduct, but only 'where the *award was procured* by corruption, fraud, or undue means.'"  Forsythe Int'l, S.A. v. Gibbs Oil Co., 915 F.2d 1017, 1021 (5th Cir. 1990) (quoting 9 U.S.C. § 10(a)) (emphasis added).  Thus, the statue "requir[es] a nexus between the alleged fraud and the basis for the [arbitrator's] decision."  Id. Where an arbitrator "hears the allegation of fraud and then rests [his or her] decision on grounds clearly independent of issues connected to the alleged fraud, the statutory basis for vacatur is absent."  Id.

Forsythe amply demonstrates that, in this case, neither a basis in fraud nor misconduct exists on which to vacate the arbitration award.  Forsythe involved a dispute between a buyer and seller on an oral sales contract.  Id. at 1018-19.  At arbitration, the seller argued that the buyer had made misrepresentations in discovery resulting in the buyer interfering with and terminating prematurely the deposition of a witness.  Id. at 1019, 1021.  While "[t]he panel . . . indicated that it . . . would consider any misconduct on the part of [the buyer] in its ultimate ruling," the panel ultimately issued a decision for the buyer.  Id. at 1019.  The seller petitioned for vacatur, and the buyer asked the district court to confirm the award.  Id.  The district court vacated the award based on the theory that the buyer's "discovery abuse" amounted to "corruption, fraud, and undue means and . . . [based on] the panel's refusal to take any action in that regard."  Id.  The Fifth Circuit reversed.  Id.

To reach its conclusion in Forsythe, the Fifth Circuit reasoned that, even if it did "concede the premise of [the panel's] inattention" to the buyer's discovery abuses in the

arbitration proceedings, it would "still reject the inference of fundamental unfairness" in the arbitration proceedings, which are designed to provide "a speedy and informal alternative to litigation." Id. at 1021-22. The Fifth Circuit admonished further that "whatever indignation a reviewing court may experience in examining the record, it must resist the temptation to condemn imperfect proceedings without a sound statutory basis for doing so," and that the statutory basis of fraud simply does not exist where no nexus connects the fraud with the arbitration decision. Id. at 1022. Upon finding that the arbitration panel heard argument and received evidence regarding the alleged fraud, declared an intention to consider allegations of fraud, and rendered a decision based evidence other than that which was at the heart of the parties' discovery dispute, the Fifth Circuit concluded that "the arbitrators' decision rest[ed] on an adequate basis," and that the seller's "complaints that the panel failed to address all issues presented [did] not render the proceedings 'fundamentally unfair' or justify disturbing the award." Id. at 1022-23.

As in Forsythe, plaintiff here cannot show a nexus between the fraud she alleges and the arbitration award; thus, plaintiff's motion must be denied. Like the arbitration panel in Forsythe, Arbitrator Rice heard arguments and testimony regarding the defendant's (now-allegedly) "fraudulent" non-production of e-mails, drew an adverse inference against defendant based on defendant's failure to produce those e-mails, but rendered his Final Award based on plaintiff's lack of any evidence of either discrimination or retaliation. The parties participated in a 3-day arbitration hearing, which resulted in the six-page Final Award, detailing the arbitrator's assessment of the evidence before him and the reasons supporting his legal conclusions. Thus, vacatur of the Final Award would be improper here because, as in Forsythe, Arbitrator Rice heard "the allegation of fraud and then rest[ed] [his] decision on grounds clearly independent of

issues connected to the alleged fraud." Certainly, if the Forsythe buyer's misrepresentation of a witness' status to prevent the seller from taking a complete deposition of that witness did not amount to the sort of fraud necessary to warrant vacatur, defendant's inadvertent non-production of e-mails that make no reference to a discriminatory or retaliatory animus cannot come close to meeting that standard.[2/] Meanwhile, the Final Award itself abundantly demonstrates that plaintiff received a fair hearing because it discusses the arbitrator's extensive analysis of all the relevant evidence presented at the hearing.

Critically, the missing e-mails themselves, which defendant produced in response to the Court's Order of June 16, 2008, eliminate any suggestion that a causal connection exists between the alleged fraud and the Final Award. Notably, plaintiff does not point to a single statement in any of the emails in question that is even arguably inconsistent with the basis for Arbitrator Rice's decision set out in the Final Award. While plaintiff argues that the e-mails identify more employees of defendant whom she would have deposed if she had known about the e-mails, she conveniently ignores that the e-mails undermine the relevance of those other employees by confirming that Broussard was the ultimate decision-maker with regard to plaintiff's termination. See Pl.'s Exh. 3, p. 6 (e-mail from Broussard's supervisor to Broussard, stating, "I'M NOT TELLING YOU TO TERM[INATE] HER. THAT'S YOUR DECISION AND YOURS ALONE"). The e-mails predating plaintiff's termination make no mention of plaintiff's race or national origin, and the single e-mail summarizing Broussard's decision to terminate plaintiff is completely consistent with Broussard's testimony at the arbitration hearing about that decision—tellingly, a point which plaintiff has not disputed in her Current Motion.

---

[2/] Contrary to plaintiff's suggestion, the fact that the e-mails were stored in hard copy rather than electronic format is not probative of whether their non-production was purposeful or inadvertent.

Under these circumstances, plaintiff cannot show that her failure to obtain those e-mails prior to the hearing is in any way causally related to the substance of the Final Award.

**D.     The FAA Requires Confirmation of the Arbitration Award.**

As demonstrated above, no statutory basis for vacatur (or modification) exists, therefore, binding precedent requires the Court to grant Defendant's Motion to Confirm Arbitration Award.  Hall St. Assocs., L.L.C. v. Mattel, Inc., 128 S. Ct. 1396, 1402 (2009) ("Under the terms of § 9 [of the FAA], a court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in §§ 10 and 11" of the FAA); Citigroup Global Mkts. Inc. v. Bacon, 562 F.3d 349, 352, 358 (5th Cir. 2009) (same).

## IV.  CONCLUSION

WHEREFORE, for the foregoing reasons, Defendant Dillard's Inc. requests that the Court enter an order denying plaintiff's motions to vacate the arbitration award, granting Defendant's Motion to Confirm Arbitration Award, and granting any further relief the Court deems just and proper.

Respectfully submitted,

**BRYAN CAVE LLP**

MICHAEL P. BURKE
(Admitted Pro Hac Vice)
Bryan Cave LLP
211 North Broadway, Suite 3600
St. Louis, MO 63102
(314) 259-2700 – telephone
(314) 259-2020 – facsimile

By: :  /s/ Tara G. Richard
**TARA G. RICHARD**
La. Bar No. 26356
Jones, Walker, Waechter,
 Poitevent, Carrère & Denègre, LLP
201 St. Charles Avenue
New Orleans, LA 70170
(504) 582-8000 – telephone
(504) 582-8011 – facsimile

Attorneys for Dillard's, Inc., f/k/a
 Dillard's Department Stores, Inc.,
 Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2009, the foregoing was filed electronically with the clerk of the court to be served by operation of the Court's electronic filing system upon the following:

ROBERT B. EVANS, III
Burgos & Evans, L.L.C.
3632 Canal Street
New Orleans, LA 70119-6135

Attorneys for Plaintiff

  /s/ Tara G. Richard