UNITED STATES DISTRICT COURT
EASTER DISTRICT OF LOUISIANA

TRINIDAD SUYAPA BARAHONA                CIVIL ACTION

VERSUS                                  NUMBER: 05-0152

DILLARD DEPARTMENT STORES, ET AL        SECTION: "B"(2)


## ORDER AND REASONS

Before this Court, are Plaintiff Trinidad Suyapa Barahona's Motion to Vacate Arbitration Award as a Result of Fraud and Defendants Dillard Department Stores, Inc., and Clinique Services, Inc.'s Motion to Confirm Arbitration Award. (Rec. Docs. 44 & 51 respectively). Both of these motions are opposed. (Rec. Docs. 50 &52 respectively). For the following reasons, Plaintiff's motion to vacate is **GRANTED** and Defendants' motion to confirm is **DENIED**.

### Facts of Case:

Trinidad Suyapa Barahona ("Plaintiff") brought the instant action against Dilliard Department Stores, Inc. and Clinique Services, Inc. ("Defendants") to recover damages from alleged discrimination conducted by Defendants. With regard to the alleged discriminatory practices, Plaintiff alleges that: (1) Defendants failed to promote, pay and treat her equal to non-Hondurans or non-Hispanics; (2) Defendants ignored her complaints of discrimination, and terminated her in retaliation for her complaints; (3) Defendants compensated Plaintiff's co-employee, who performed the

same work, at a higher rate of pay than Plaintiff; (4) Defendants yelled at her in front of customers; (5) Defendants attempted to treat her as a part-time employee; (6) Defendants repeatedly made suggestions that she should return to her native country; (7) Defendants repeatedly told her that she could not speak Spanish while at work; (8) After the September 11, 2001 terrorists' attacks in New York City, Defendants falsely told customers that Plaintiff was from Afghanistan; (9) Defendants falsely accused Plaintiff of dishonesty in order to terminate her; (10) Defendants failed to recognize Plaintiff as employee of the month despite her high sales levels, and in turn recognized other non-Honduran, non-Hispanic employees for employee of the month even when their sales levels were lower than the sales of Plaintiff; and (11) Defendants repeatedly sent her home to limit her sales opportunities.

The parties recognized on August 25, 2005 that the claims raised by Plaintiff's lawsuit were subject to arbitration, and the parties filed a Consent Motion to Stay, which was granted by this Court on October 18, 2005. The parties conducted discovery, taking 13 depositions amongst other things and conducted a 3-day arbitration hearing. Robert C. Rice ("Arbitrator Rice") was assigned to the dispute as the arbitrator. Arbitrator Rice ultimately found that Plaintiff did not carry her burden of proof for her claims of race or national origin discrimination, nor did she carry her legal burden of proof with regard to retaliation.

However, according to Plaintiff, the last day of testimony in the arbitration uncovered the existence of some significant evidence the arbitrator never considered.

Plaintiff contends that the manager, who decided to terminate her, admitted in the last day of testimony at the arbitration hearing that he had emails regarding her employment which "were never produced, despite specific discovery requests." Plaintiff alleges that Defendant did not comply with its September 19, 2006 discovery request. Thus, Plaintiff moved to lift the stay previously entered on the case, and moved to have the arbitration award vacated due to Defendants' alleged violation of the arbitration rules. Essentially, Plaintiff argued that Defendants abused the discovery process denying Plaintiff her right to a fair hearing. On June 16, 2008, this Court remanded the matter to Arbitrator Rice for him to examine the emails at issue and reconsider his findings in view of said emails. The Court further ordered the parties to submit to it a joint proposal of emails to be examined. After the parties complied with this order the Court issued an additional order that specified the emails that were to be submitted to the arbitrator for examination. The parties were ordered to submit to the arbitrator "any and all emails to or from Patrick Broussard, Charlyn Bernard, Linda Sholtis, and/or Diane Champagne, created during her employment with Defendant, which regard Suyapa Barahona…"

Although Defendants complied with the orders of the Court, they maintained their rights to assert the doctrine of *functus officio* and to assert that the Federal Arbitration Act (9 U.S.C. §§ 1-16) "provides the exclusive method and means for judicial review of the arbitration award at issue… and does not authorize the remand directed in the June 5, 2008 Order."  Thus, Defendants' complied with the June 16, 2008 Order submitting all of the emails described to Arbitrator Rice. But, Defendants argued that Arbitrator Rice had no authority to review the emails or reconsider the matter under the doctrine of *functus/ officio.* Arbitrator Rice scheduled a telephone meeting with the parties, and after an inability of the parties to reach an agreement on his authority to take further action on the case, Arbitrator Rice stated that he did not believe he had the authority to act given his understanding of the doctrine of *functus officio*. Arbitrator Rice also noted his concern that "the issue of authority/*functus officio* had not been presented to the District Court for decision."  It is in these set of circumstances that the parties return this Court asserting their current motions.

**Law and Analysis:**

    **A. Standard**

The Federal Arbitration Act, 9 U.S.C.S. § 1 et seq., "supplies mechanisms for enforcing arbitration awards: a judicial decree confirming an award, an order vacating it, or an order modifying or

correcting it." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 128 S. Ct. 1396, 1402 (U.S. 2008). In determining whether to confirm an arbitration award, the court is required to grant the arbitration award unless the award is vacated, modified, or corrected. *Id*. at 1405. Thus, arbitration awards are generally upheld unless some type of procedural injustice has occurred, "and §§ 10 and 11 of the FAA enumerate the circumstances under which an award may be vacated, modified, or corrected when the action is one brought under the Act." *Citigroup Global Mkts. Inc. v. Bacon*, 562 F.3d 349, 352 (5th Cir. 2009). "There is nothing malleable about "must grant," which unequivocally tells courts to grant confirmation in all cases, except when one of the "prescribed" exceptions applies." *Hall St. Assocs., L.L.C.,* 128 S. Ct. at 1405; quoting, 9 U.S.C.S. §§ 9-10.

9 U.S.C.S. §10 explains that courts are permitted to vacate an arbitration award in the following circumstances: (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final,

and definite award upon the subject matter submitted was not made. The Federal Arbitration Act provides that a party who alleges that an arbitration award was procured through fraud or undue means must demonstrate that the improper behavior was (1) not discoverable by due diligence before or during the arbitration hearing, (2) materially related to an issue in the arbitration, and (3) established by clear and convincing evidence. *Gingiss Int'l, Inc. v. Bormet*, 58 F.3d 328, 333 (7th Cir. 1995). "Although "fraud" and "undue means" are not defined in section 10(a) of the FAA, courts interpret the terms together." *Trans Chem. Ltd. v. China Nat'l Mach. Import & Export Corp.*, 978 F. Supp. 266, 304 (S.D. Tex. 1997). Fraud necessitates a showing of bad faith during the arbitration proceedings, such as bribery, undisclosed bias of an arbitrator, or willfully destroying or withholding evidence. *Id*. Undue means is a behavior that is immoral if not illegal or otherwise in bad faith. *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403-1404 (9th Cir. 1992). "Section 10(a)(1) also requires a nexus between the alleged fraud or undue means and the basis for the arbitrators' decision." *Trans Chem. Ltd.*, 978 F. Supp. at 304.

Arbitrators are not required to hear all of the evidence presented by the parties, but they are required to give each of the parties an adequate opportunity to present its evidence and arguments. *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan*

*Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 300-301 (5th Cir. 2004). In determining whether to vacate an arbitration award, courts should consider whether the exclusion of relevant evidence deprives a party of a fair hearing. *Id*. "Every failure of an arbitrator to receive relevant evidence does not constitute misconduct requiring vacatur of an arbitrator's award." *Hoteles Condado Beach, La Concha & Convention Center v. Union de Tronquistas Local 901*, 763 F.2d 34, 40 (1st Cir. 1985). **Federal courts can only justifiably vacate an arbitrator's award when the arbitrator's refusal to hear pertinent and material evidence prejudices the rights of the parties to the arbitration proceedings.** *Id.*

### B. Analysis

After remanding this matter to Arbitrator Rice with instructions for him to reconsider his findings in light of the newly produced emails, Arbitrator Rice determined, with the consultation of the parties, that he lacked authority to act under the doctrine of *functus officio*. (Rec. Doc. 51-6 at 2). *Functus officio* is "a fundamental common law principle that once an arbitrator has made and published a final award his authority is exhausted and he is *functus officio* and can do nothing more in regard to the subject matter of the arbitration." *McClatchy Newspapers v. Central Valley Typographical Union No. 46*, 686 F.2d 731, 734 (9th Cir. 1982). It is the notion that, in the law of arbitration, once an arbitrator has issued a final arbitration

award, he may not later revise it. *Pace Union, Local 4-1 v. BP Pipelines*, 191 F. Supp. 2d 852, 856 (S.D. Tex. 2002). However, an arbitrator can (1) correct a mistake which is apparent on the face of his award; (2) decide an issue which has been submitted but which has not been completely adjudicated by the original award; or (3) clarify or construe an arbitration award that seems complete but proves to be ambiguous in its scope and implementation. *Brown v. Witco Corp.*, 340 F.3d 209, 219 (5th Cir. 2003). Although Arbitrator Rice voiced his concern that this issue had not been presented to this Court, neither party has asked this Court to make a determination on Arbitrator Rice's authority to act. Therefore, this Court need not determine whether Arbitrator Rice has the authority to act, the issue is solely whether the arbitration award should be vacated or confirmed.

The issue in the instant action is whether the alleged discovery abuse by Defendants with regard to the recently produced emails, constitutes fraud which deprived Plaintiff of a fair hearing. In anticipation of the arbitration process, Plaintiff submitted formal written discovery requests to Defendants. (Rec. Doc. 26-2 at 4). One such request asked Defendants to "Please Produce all memoranda, emails, notes, correspondence, recordings or other documentation in your possession received or produced regarding the employment of Trinidad Suyapa Barahona from 1996 through 2004." (Rec. Doc. 26-2 at 4). On the last day of

testimony in the arbitration hearing, Defendants' store manager revealed that he had created emails discussing Plaintiff's employment and termination, which had not been produced during discovery. (Rec. Doc. 50 at 7). Plaintiff contends that Defendants fraudulently withheld these emails, effectively denying Plaintiff of a fair trial. (Rec. Doc. 44 at 1). Although Arbitrator Rice saw no reason to sanction Defendants for the alleged discovery abuse, he did state that "the failure to produce these obviously relevant emails, drafted by the decision-maker concerning events in the case is inexcusable." (Rec. Doc. 50-2 at 2). Arbitrator Rice gave several possibilities for why the emails had not been produced (1) Defendants' had accidentally misplaced the emails somewhere between the copy machine and the mailroom; or (2) the pages were mislaid with Plaintiff's counsel after receipt. (Rec. Doc. 50-2 at 2).

The nature of the emails significantly limits the likelihood of Arbitrator Rice's theories. The emails give specific details about pertinent issues between Plaintiff and Defendants which he himself found relevant. One email describes the actual meeting that took place between Plaintiff and her store manager when he decided to terminate her. (Rec. Doc. 50-3 at 60). While both parties describe this meeting differently, the email confirms that at some point in the conversation Plaintiff complained of her manager's alleged discrimination towards her, and at some point in

the meeting Plaintiff's store manager decided to terminate her. (Rec. Doc. 50-3 at 60). Another email discusses terminating Plaintiff, and the possibility of litigation as a consequence of that decision. (Rec. Doc. 50-3 at 57). Several of the emails discuss a complaint placed by a customer who alleged that he saw the Plaintiff being yelled at in public by another white employee, to which the supervisory officials discuss whether they should address the incident or wait for Plaintiff to complain about it. (Rec. Doc. 50-3 at 48, 50). The emails appear directly relevant to discrimination, including retaliatory discrimination claims that Plaintiff asserts.

In determining whether an arbitration award is fatally flawed by fraud, Courts apply a three-prong test: (1) the mover must establish the fraud by clear and convincing evidence; (2) the fraud must not have been discoverable upon the exercise of due diligence before or during the arbitration; and (3) the person challenging the award must show that the fraud materially related to an issue in the arbitration. *Karaha Bodas Co., L.L.C.*, 364 F.3d at 306. To satisfy prong (1), Plaintiff alleges that Defendant intentionally withheld the emails which had been printed out and were sitting in a file kept by the store manager. (Rec. Doc. 44-2 at 5). With regard to prong (2), Plaintiff contends that but for the store manager's unexpected admission that he sent emails to himself concerning Plaintiff's employment, she would have never known they

existed. (Rec. Doc. 26-7 at 2). To satisfy prong (3), Plaintiff alleges that the emails go directly to the motivation and intent of Defendants to terminate Plaintiff and in several instances contradict the reasons given by Defendants for Plaintiff's termination. (Rec. Doc. 44-2 at 5-6). Defendants counter these allegations, by first stating that failing to produce documents in pre-arbitration discovery doesn't constitute the type of fraud on which a court can vacate an arbitration award. (Rec. Doc. 50 at 12); *Karaha Bodas Co.*, 364 F.3d at 306. Additionally, Defendants contend that because Plaintiff discovered the existence of the emails during the arbitration hearing, she is precluded from being able to satisfy prong (2). (Rec. Doc. 50 at 13). Defendants also contend that Plaintiff cannot show a nexus between the alleged fraud and the arbitration award. (Rec. Doc. 50 at 14).

According to *Trans Chem. Ltd*. 978 F. Supp. at 304, fraud can be established by a showing of bad faith during the arbitration proceedings, such as bribery, undisclosed bias of an arbitrator, or willfully destroying **or withholding evidence**. Additionally, *Karaha Bodas Co.*, can be distinguished from the instant case because the party asserting fraud in that case was given an additional opportunity for discovery to remedy the lack of disclosure but refused. *Karaha Bodas Co.*, 364 F.3d at 307. Here, Plaintiff attempted to acquire this information on September 19, 2006, and was denied its existence, while the emails allegedly remained

printed out in the store manager's file. (Rec. Doc. 26-2 at 4); (Rec. Doc.44-2 at 2). The record reflects that Plaintiff did not refuse to take the additional steps this Court offered to have the emails considered. Plaintiff satisfied prong (1).

Based on *Trans Chem. Ltd.*, 978 F. Supp. at 306, Defendants assert that "where the grounds for fraud or undue means is not only discoverable, but discovered and brought to the attention of the arbitrators, a disappointed party will not be given a second bite at the apple." In *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1404 (9th Cir. 1992), the court decided that all the alleged undue means were known to the parties and the arbitrators from the outset of the arbitration. Thus, "the requirement that the fraud must not have been discoverable upon the exercise of due diligence was not satisfied." *Id*. Factually, Plaintiffs are distinguishable from the party in *A.G. Edwards & Sons, Inc*. that was complaining of fraud; the existence of the emails was not discovered until the last day of testimony in the arbitration hearing. (Rec. Doc. 44-2 at 1). Before reviewing the emails Arbitrator Rice issued his Final Award, and Plaintiff then filed a Motion to Lift Stay and to Vacate Arbitration Award, which prompted this Court to issue an order for the parties to submit the additional emails to the arbitrator to reconsider his findings. (Rec. Doc. 50-2 at 1); (Rec. Doc. 26-2); (Rec. Doc. 39). Defendants produced the emails to Arbitrator Rice in compliance

with this Court's June 16, 2008, Order, but asserted the doctrine of functus/officio. (Rec. Doc. 50 at 3-4). In effect, the arbitrator has not been able to truly examine the emails and the alleged fraud, as they were not produced until after his final award, at no fault of or lack of trying on Plaintiff's part. The extent of the fraud could not have been known by plaintiff, her counsel or Defendant's counsel and the arbitrator before the emails were actually produced by Defendant's store manager. Plaintiff has satisfied prong (2).

Defendants rely solely on *Forsythe Int'l, S.A. v. Gibbs Oil Co.*, 915 F.2d 1017, to assert that Plaintiff fails to satisfy prong (3). In *Forsythe Int'l, S.A.*, the Fifth Circuit reversed the district court's vacatur of an arbitration award because the nexis between the alleged fraudulent conduct and the award was absent. *Id*. at 1023. This case involved an arbitration panel awarding Forsythe Int'l, S.A. ("Forsythe") damages for the breach of an oral contract with Gibbs Oil Co., ("Gibbs"). *Id*. at 1018. In the contract, Gibbs would sell Forsythe an amount of fuel which Gibbs would then deliver the same fuel to another party that Forsythe was re-selling the fuel to in Scotland. *Id*. at 1019. The contract Forsythe had with the third-party in Scotland required a duty-free cargo, but the contract between Forsythe and Gibbs did not expressly allocate responsibility for United Kingdom duty fees. *Id*. The contract between Forsythe and Gibbs only required Gibbs to

-13-

obtain a EUR-1 form for duty-free passage, which Gibbs obtained but was declared invalid by United Kingdom custom officials. *Id*. The Scotland Company charged Forsythe with the customs duty, and Forsythe claimed that Gibbs was responsible for the customs duty because it failed to provide duty-free cargo. *Id*. This controversy was submitted to the arbitration panel, which ultimately ruled in Forsythe's favor. *Id*. "The district court vacated the arbitration award, and remanded the cause to a new panel finding that Forsythe fraudulently procured the award, and that the panel was guilty of misconduct for not hearing material evidence or act on the allegations of misrepresentations against Forsythe." *Id*. at 1018. Gibbs had raised a discovery abuse issue concerning a telephonic deposition of a former Forsythe employee (Peter Tap) who had been responsible for drafting the letters of credit underlying the Forsythe-Gibbs oil transaction. *Id*. at 1019. The panel rested its decision on the action of Gibbs, providing minimal weight to the alleged discovery abuse. *Id*. The allegations against Forsythe were that: (1) Forsythe misrepresented to the panel that Mr. Peter Tap was an employee of Forsythe when in fact he was a former employee; (2) this misrepresentation allowed Forsythe to control the availability of Tap and to interfere with the questioning of Tap during a telephonic deposition; (3) Forsythe imposed an arbitrary time limit on Tap's deposition; and (4) Forsythe misrepresented, whether intentionally or not, Tap's

medical condition, which enabled Forsythe to terminate the telephonic interview prematurely. *Id*. at 1021. The district court, in hearing Motions to Confirm and Vacate the panel decision, found that "the actions and representations of Forsythe during pre-hearing discovery and the arbitral panel's response or lack of response thereto so seriously undermined the arbitral process and award as to require the vacatur of the award." *Id*.

The Fifth Circuit reversed the district court decision in *Forsythe*, reasoning that the most important question was whether the arbitration proceedings were fundamentally unfair. *Id*. at 1020. In deciding this question, the court noted that the arbitration panel may have been inattentive to the discovery abuse allegations, but that does not necessitate an inference of fundamental unfairness. *Id*. at 1021. The court further added that "the statute does not provide for vacatur in the event of any fraudulent conduct, but only where the award was procured by corruption, fraud, or undue means." *Id*.; citing, 9 U.S.C. § 10(a). Thus, the nexus between the fraud and the award may exist when fraud prevents the panel from considering a material issue, "but where the panel hears the allegation of fraud and then rests its decision on grounds clearly independent of issues connected to the alleged fraud, the statutory basis for vacatur is absent." *Id*. at 1022. Thus, when the panel heard the allegations of fraud, and decided the case on independent grounds, the fraud did not taint

their decision. *Id*.

The instant case is distinguishable from *Forsythe Int'l S.A.* because Plaintiff has shown a nexus between the fraud and the arbitration award. Under this prong, Defendants assert that even assuming Plaintiff could prove fraud; she cannot prove a nexus between such fraud and the arbitration award. (Rec. Doc. 50 at 14). In *Forsythe Int'l S.A.*, the arbitration panel heard the allegations of fraud, and decided the case on independent grounds, whereby the fraud did not taint their decision. *Id*. at 1022. In the instant case a nexus exists between the withheld emails and Arbitrator Rice's Final Award. Arbitrator Rice decided that Plaintiff did not carry her burden of proof on claims of race or national origin discrimination, nor did she carry her legal burden of proof with regard to retaliation. (Rec. Doc. 50-2). The emails discuss the alleged discrimination, and provide a specific look into the minds of Defendants' determination to terminate Plaintiff. (Rec. Doc. 50-3 at 48-60). Additionally, the emails evidence a customer complaining about a white employee yelling at Plaintiff in front of customer, to which Plaintiff's supervisors wondered whether they should address the situation before Plaintiff complained. (Rec. Doc. 50-3 at 48, 50). An arbitration award that failed to take into account these untimely produced emails would amount to a fundamentally unfair hearing for Plaintiff. Defendants' own failure to timely provide these emails for consideration to

Arbitrator Rice, prior to his findings, constitutes willful withholding of material evidence by the Defendant itself. Thus, the instant case is distinguished from *Forsythe Int'l, S.A.*, because Arbitrator Rice did not have this relevant and material evidence before his decision due to an intentional withholding of same by Defendant's store manage - a key witness and actor here. Plaintiff has satisfied prong (3).

Accordingly, Plaintiff's Motion to Vacate the Arbitration Award is **GRANTED**, and Defendants' Motion to Confirm the Arbitration Award is **DENIED**.

New Orleans, Louisiana, this 3rd day of November, 2009.

_____
UNITED STATES DISTRICT JUDGE